IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| $42,102.00 IN U.S. CURRENCY SEIZED ON DECEMBER 11, 2017, PURSUANT TO THE EXECUTION OF A FEDERAL SEARCH WARRANT, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT IN FORFEITURE**

NOW COMES plaintiff, the United States of America, by Justin E. Herdman, United States Attorney for the Northern District of Ohio, and James L. Morford, Assistant U.S. Attorney, and files this Complaint in Forfeiture, respectfully alleging as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

JURISDICTION AND INTRODUCTION

1. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C. Section 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. Section 981(a)(1)(C).

2. This Court has *in rem* jurisdiction over the defendant currency pursuant to: (i) 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395, because the action accrued in this district.

3. Venue is proper in this district pursuant to: (i) 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) 28 U.S.C. Section 1395 because the action accrued in this district.

4. This Court will have control over the defendant currency through service of an arrest warrant *in rem*, which the United States Marshals Service will execute upon the defendant currency. *See*, Supplemental Rule G(3)(b) and G(3)(c).

5. On December 11, 2017, agents of the U.S. Postal Service Office of Inspector General (USPS OIG) – assisted by Postal Inspectors of the U.S. Postal Inspection Service (USPIS) - seized the defendant $42,102.00 in U.S. Currency (hereinafter, the defendant currency) at the East 59th Street, Cleveland, Ohio, residence of Jennifer Riccardi, a postal service employee. The seizure was made pursuant to the execution of a federal search warrant.

6. The defendant currency is now in the custody of the federal government.

7. The USPIS commenced an administrative forfeiture proceeding against the defendant currency. A claim to the defendant currency was submitted in the administrative forfeiture proceeding by Jennifer Riccardi, thereby requiring the filing of this judicial forfeiture action.

8. The defendant currency is subject to forfeiture to the United States under 18 U.S.C. Section 981(a)(1)(C) in that it constitutes – or is derived from - proceeds traceable to a violation(s) of 18 U.S.C. Section 1708 (mail theft).

**FORFEITURE**

9. Jennifer Riccardi was a postal service employee, who worked at the Cleveland Processing and Distribution Center, located at 2400 Orange Avenue, Cleveland, Ohio.

10. On December 7, 2017, at approximately 4:50 p.m., a USPS OIG Special Agent observed Riccardi remove U.S. mail from her assigned work area - placing the items in her personal bag - and go on her lunch break. Riccardi was observed leaving her work area at approximately 5:00 p.m. and head directly to the employee entrance/exit, where she used her USPS employee badge to exit the building.

11. On December 11, 2017, beginning at approximately 2:00 p.m., USPS OIG agents again conducted surveillance of Riccardi. OIG agents observed Riccardi remove mail – particularly, two large bundles of processed letter mail - from her assigned work machine and place it into a soft-sided cooler/lunch bag. OIG agents also observed Riccardi place an additional bundle of processed letter mail into a soft-sided shoulder bag.

12. At approximately 5:00 p.m., OIG agents observed Riccardi leave her work area and exit the building through the employee entrance/exit located on Broadway Avenue. Riccardi departed the parking lot in her personal vehicle. She returned at approximately 5:29 p.m.

13. OIG agents approached Riccardi as she was exiting her vehicle and identified themselves to her. The agents advised Riccardi that they wanted to speak with her inside the building.

14. At the outset of the interview, the OIG agents identified themselves and read an advisement of rights form to Riccardi. She stated that she understood her rights, initialed and signed the form, and agreed to speak to the agents. Among other things, the following transpired during the interview:

a.) Riccardi stated that she has been a postal service employee for the past two years, beginning in October or November of 2015, and that she has always been assigned to the Cleveland Processing and Distribution Center as a postal support employee/clerk.

b.) Riccardi stated her lunch break is always at 5:00 p.m.

c.) Riccardi stated her primary duty is working on the machines that get raw incoming collection mail from the loading docks. The mail then flows through her machine, which cancels the stamps and sorts the mail. The machines break down the processed mail into 12 separate "bins", which include Cleveland, Akron, Toledo, Cincinnati, Columbus, Pennsylvania, and "orange mail" (i.e., bills).

d.) Riccardi was told that OIG agents witnessed her take mail she processed that evening and place it inside her cooler/lunch bag.

e.) Further, Riccardi was shown a video clip taken that evening that showed her placing a thick stack of mail inside her cooler/lunch bag.

f.) Riccardi was asked to explain what was going on. She stated that she began stealing mail around Thanksgiving of 2017. She knew people (customers) send cash and gift cards through the mail.

g.) Riccardi was asked what she did with the mail she stole that day. She stated that she took it home during her lunch break. Riccardi said she put the stolen mail in her cooler/lunch bag and her shoulder bag prior to leaving the building for her lunch break. She further stated that she stole all greeting cards, looking for cash and gift cards.

h.) Riccardi stated that she has stolen, at the most, 20-25 pieces of mail in any given shift, because that is all she could fit inside her bag.

i.) Riccardi was asked how many pieces she stole on Thursday, December 7, 2017. She stated that she stole approximately 20 greeting cards.

j.) Riccardi stated that if she finds checks, she throws them out.

k.) Riccardi stated that she usually puts the stolen mail pieces in a plastic bag when she is done going through it, then throws it away at a gas station, usually the BP gas station by her house.

l.) Riccardi stated that the house she currently lives in is her boyfriend's house. Her boyfriend's mother owns the house, but she [the mother] does not live there.

4

m.) Riccardi stated that she snorts heroin, but not when she went home that evening during her lunch break.

n.) Riccardi stated that there are a couple grams of heroin in a plastic baggie in the living room and a gun on top of the refrigerator.

o.) Riccardi was asked if she had any gift cards on her that she had stolen from the mail. Riccardi removed her wallet and produced three Visa gift cards and one Marathon gift card. Riccardi stated that she stole them from the mail the prior week.

p.) Riccardi stated that she has stolen Target gift cards, but has not used them. She said she would sell the Target gift cards to people on the streets and that a lot of people will give you 50 cents on the dollar for the cards.

q.) Riccardi then admitted that she probably began stealing in August of 2017, and not Thanksgiving of 2017.

r.) Riccardi said sometimes she burns (previously stolen mail), and sometimes she just throws it away.

15. During the interview, Riccardi was asked if she would consent to a search of her vehicle. Riccardi consented to the search and signed a Consent to Search form for the vehicle, which was parked in the employee lot.

16. A search of Riccardi's vehicle was conducted and Macy gift card backers, Subway gift cards, and miscellaneous receipts were recovered.

17. Receipts from Subway showed gift card redemptions made on August 23, 2017 and December 1, 2017.

18. Another receipt found inside Riccardi's vehicle was from the store The Gift Card Loop. The receipt was dated December 23, 2016, and showed the sale of numerous gift cards to the store for a cash payout.

19. At approximately 11:53 p.m. on December 11, 2017, OIG agents and USPIS Postal Inspectors executed a federal search warrant at Riccardi's East 59th Street, Cleveland,

5

Ohio, residence. Among other things, the following items were seized from the following locations:

    A.    Kitchen:

        (i)    Bersa BP9CC 9mm semi-automatic handgun, serial number D57968, loaded with one magazine.

    B.    Family Room:

        (i)    80 pieces of first class U.S. mail (sealed).

        (ii)    28 pieces of first class U.S. mail (opened/rifled).

        (iii)    2 - $180.00 U.S. Postal Service money orders.

        (iv)    352 gift cards (various retailers/restaurants).

        (v)    2 gift certificates.

        (vi)    $8,967.00 in U.S. Currency.

        (vii)    various types and amounts of drug paraphernalia (syringes, razor blades, straws, bottle caps with drug residue).

    C.    Office:

        (i)    1,147 gift cards (various retailers/restaurants).

    D.    Kitchen Storage:

        (i)    $33,135.00 in U.S. Currency.

        (ii)    3 miscellaneous gift cards.

        (iii)    money counter (in box) with receipt.

    E.    Second Level Loft:

        (i)    4 spoons with residue.

        (ii)    2 personal checks in other persons' names.

        (iii)    mortar and pestle with residue.

20. The defendant $42,102.00 in this case is the total of the $8,967.00 U.S. Currency seized from the family room of the residence [paragraph 19(B)(vi)] and the $33,135.00 U.S. Currency seized from the kitchen storage area [paragraph 19(D)(i)].

## CONCLUSION

21. By reason of the foregoing, the defendant $42,102.00 in U.S. Currency is subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C) in that it constitutes – or is derived from – proceeds traceable to a violation(s) of 18 U.S.C. § 1708 (mail theft).

WHEREFORE, plaintiff, the United States of America, requests that this Court enter judgment condemning the defendant currency and forfeiting it to the United States, and providing that the defendant currency be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

Respectfully submitted,

Justin E. Herdman
U.S. Attorney, Northern District of Ohio

By: _____
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio
Carl B. Stokes U.S. Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
216.622.3743 / Fax: 216.522.7499
James.Morford@usdoj.gov

## VERIFICATION

STATE OF OHIO           )
                        ) SS.
COUNTY OF CUYAHOGA  )

I, James L. Morford, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action. The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

_____
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio

Sworn to and subscribed in my presence this 15th day of May, 2018.

_____
Notary Public

DANIEL R. RANKE, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 O. R. C.